Related DDJ

FILED
CLERK, U.S. DISTRICT COURT

2/24/23

CENTRAL DISTRICT OF CALIFORNIA
BY:                    DEPUTY
cs

DESHAY DAVID FORD, PRO PER

1409 Halesia Lane

Oxnard, California 93030

Phone :805-816-6321

E-Mail: deshayford45@gmail.com

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

OFFICE OF THE CLERK

255 EAST TEMPLE STREET ,ROOM 180

LOS ANGELES, CALIFORNIA

CV23-1512-VBF(RAO)

California Superior Court

CA. COUNTY NO.:21STCV11454

Deshay David Ford                        Case Number Pending

Under the 1964 Civil Rights Acts

Prohibits discrimination based

Race, age, sex, disability ,

Plaintiff

WRONGFUL TERMINATION,

HARASSMENT, DISABILITY

Plaintiff's rights under the 1964

Vs.

 Gary Lavigna,

Insurance Company,

Luis A. Cardenas

PAGE 1

4

On 9/26/2018 the Plaintiff was working for defendant(s) Mr. Gary Lavigna and he

was violently assaulted by Mr. Lavigna' patient Mr. Jeffrey Corliss. The Plaintiff

suffered severe bodily injury . The injury was a right leg Achilles Tendon Tear.
The Plaintiff obtained an attorney and he filed a complaint in the Los Angeles The Legal issues
Superior Court case number: 21STCV11454 on 8/21/2021.  The legal issues were
Wrongful termination on 12/02/2019 ( Exhibits, 1,and 2). Th( see Plaintiff former attorney
filed a California Labor Code Section 132 (a), misdemeanor for terminating an employee
for filing a Workers' Compensation Claim ( see Exhibit, 3, California Labor Code Section
132 (a),).  The Plaintiff was terminated on 12/02/2019 after he was released to return to
Work by his treating physician at Kaiser Permanente on 11/08/2019.  The Plaintiff's surgery
to repair his right Achilles Tendon tear on 6/19/2019 failed.  The Plaintiff had a permanent
disability.  The Plaintiff challenged his termination on 2/20/2020 California Employment
Appeals Board, Oxnard, California with Administrative Judge  Keith Schulner on 2/20/2020
and the Plaintiff won the appeal for denial of his unemployment benefits ( see Exhibit,4
Judge Keith Schulner's decision, 2/20/2020).
The Plaintiff Mr. Ford refused to participate in the selection of Judge Luis A. Cardenas as
the Arbitrator for his case( see Exhibit ,5, Stipulation for Arbitration ).  The Plaintiff Mr. Ford
did not participate in the selection of Judge Cardenas as an Arbitrator  for his case. Judge
Cardenas was selected against Mr. Ford's protest ( see Exhibit ,6, Mr. Ford written protest).
The Plaintiff had made several requests to his Mr. Benjam Sampson that he would prefer
an African-American's Arbitrator.  Mr. Sampson refused to accept Mr. Ford's requests
for  an African-American's Arbitrator. The Plaintiff felt that the demands by his attorney
and the Defendant's attorney Ms. Michele  Terry was conspiring to select Judge Cardenas
against the Plaintiff's request for an African-American's Arbitrator was clearly
bias and prejudice( see Exhibit,7, Ms. Terry's legal motion concerning her Arbitrator
Judge Luis Cardenas.



PAGE 2

The Plaintiff believed the reason that Ms. Terry was demanding that Judge Cardenas be her

arbitrator was because she knew that was going to be bias, prejudice against the Plaintiff

and he was going to rule in her favor.   The Plaintiff believed that Ms. Terry demanding

that Judge Cardenas be selected as her Arbitrator was bias, prejudice, racist,

and a clear violation of the Plaintiff's rights under the 1964 , which prohibits, racial, age,


sex, and disability discrimination ( see Exhibit, 8, leg as the Arbitrator , Motion concerning the Plaintiff

non-participation in an Arbitration process that was clearly racist, bias and prejudice toward

the Plaintiff's case.

The Plaintiff believe that he as an American citizen has a Constitutional Rights to seek redress

of his legal issues of discrimination and violation of his legal rights under the 1964 Civil Rights Acts

that prohibits, discrimination based on race, sex, age, harassment, wrongful termination

in the United States District Court.

On January 4,2023 Judge Stephen I. Goorvitch of the Los Angeles Superior Court held a hearing

Involving defendant (s) attorney Ms. Michele Terry request for a dismissal of the Plaintiff's

case 9 see Exhibit, 9, Judge Goorvitch's decision on Ms. Terry's motion to dismiss the Plaintiff's

case for arbitration for non-participation. Judge Goorvitch stated that he had no choice, but

to dismiss the Plaintiff's case ( see Judge Goorvitch's decision to dismiss the Plaintiff's case

had already been done on 03/24/2021, see page 3 of Judge Goorvitch's dismissal with prejudice

Exhibit 9).   When Judge Goorvitch had the telephonic conference with the Plaintiff on January

4,2023 , Judge Goorvitch had already dismissed with prejudice the Plaintiff's case for

non-participation on 3/24/2021.  The telephonic hearing that Judge Goorvitch conducted

with the Plaintiff on January 4,2023, Judge Goorvitch had already dismissed with prejudice

the Plaintiff's arbitration case on 3/24/2021.  The hearing on January 4,2023 was clearly

for the purpose of degrading the Plaintiff as a poor black man. Judge Goorvitch stated to

the Plaintiff on January 4,2023 that he had no choice, but to dismiss his arbitration

with prejudice that was not the truth.   arbitration procdessAccording to 2022 California rules of Court

Standard 5. duty: " An arbitrator must act in a manner that upholds the  integrity




and fairness of the of the arbitration process. He or she must maintain impartiality

PAGE 3

toward all participants in the arbitration at all times. The Plaintiff had filed Exhibit, 6, with

Judge Goorvitch. Judge Goorvitch was fully aware that the Plaintiff had filed a complaint

Concerning Judge Luis A. Cardenas lack of impartiality, bias, and prejudice toward the

Plaintiff and his case. Ms. Terry's client Mr. Gary Lavigna had terminated the Plaintiff in violation

of California Labor Code Section 132 (a), misdemeanor for terminating an employee for

Filing a Workers' Compensation Claim (9/26/2018), see( Exhibits, 1,2, 3, 4 ,5,and 6).


Ms. Terry's client Mr. Gary Lavigna further violated California Insurance C ode Section 11760.1

Fraud to under reporting employees 's salaries for the purpose of reducing the premiums,

rates, or cost of insurance, ( see Appendixes, B) Examine Appendixes, C, Mr. Lavigna;s attorney

Mr. Steve Rosenfeld 's Stipulation of the Plaintiff's salaries for temporary and permanent

disability.  Please examine Appendixes, E,D, E, F, H, I,.

On or about July,2022 the Plaintiff filed a complaint with Los Angeles U.S. Attorney

a complaint against Judge Luis A. Cardenas for Racist harassment, threats,  and

threatening e-mails demanding that the Plaintiff participate in their arbitration (

213-894-2879,  U.S. Attorney Civil Rights Unit Chief, Civil Division United States's

Attorney's Office Los Angeles Unit.

Judge Goorvitch cannot claim Judicial Immunity he violated the Plaintiff's Constitutional

under the 1964 Civil Rights Act by denying the Plaintiff's his request for another Arbitration.

Denying a black man Constitutional Rights to a trial.  Judge Luis Cardenas violated

the Plaintiff 's rights under the 1964 Civil Rights by  his racist bias, prejudice toward

the Plaintiff as a result of his race by being bias, and racist prejudice toward the  Mr. Ford.


RESOLUTION:

The Plaintiff requesting damages for his health and mental and pain and suffering for $500,000

Submitted by _____ Date 2/25/2023

DESHAY DAVID FORD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
OFFICE OF CLERK

Proof of Service by Mail

I declare that: DESHAY P. FORD

I am (resident of / employed in) the county of VENTURA , California.

I am over the age of eighteen years, my (business / residence) address is:

1409 HALESIA LANE, Oxnard, CA. 93030

On "DEC" 2/25/2023, I served the attached Complaint
on the parties listed below in said case, by placing a true copy thereof enclosed in
a sealed envelope with postage thereon fully paid, in the United State mail at
For County addressed as follows:

1. GARY HAVIGMA, 5777 W. Century Blvd, 675
   Los Angeles, Ca. 90045
2. LUIS A. CARDENAS, 5 Park PLAZA,
   Suite 400, IRVINE, CALIFORNIA 92614

I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct, and that this declaration was executed on

(date) 2/25/2023, at Oxnard , California.

Type or print name DESHAY D. Ford

Signature Deshay Claud Ford

④

⑧



# IABA.

December 2, 2019



DeShay Ford
1409 Halesia Lane
Oxnard, CA 93030

Dear DeShay Ford,

This letter confirms the termination of your employment with Institute for Applied Behavior Analysis. Enclosed with this letter you will find:

  a) Your final paycheck reflecting all pay due through your termination date, including any accrued Vacation;
  b) Change of Employment Relationship Notice;
  c) Information regarding unemployment insurance in California; and
  d) Information regarding the California HIPP program
  e) Separation information regarding benefits

All property belonging to the Institute for Applied Behavioral Analysis, which you have under your control or in your personal possession, must be returned and delivered immediately. Such property shall include, but not be limited to: keys, program notebook and/or data sheets, etc.

If you have any additional questions, please feel free to contact Human Resources at: ............

Jason Rue I.A.B.A.
5777 W. Century Blvd
Los Angeles, CA 90045
(323)891-8252
humanresources@IABA.com

## CHANGE IN EMPLOYMENT RELATIONSHIP NOTICE

**NAME**      DESHAY FORD                    SSC#  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

**EFFECTIVE DATE**    DECEMBER 2, 2019

Your employment status has changed for the following reason:

**Voluntary:**                           **Involuntary:**
Resignation     _____                  Termination         X
Other           _____                  Layoff/Reorganization  _____

I certify the above information is true and correct and authorize the release of this document as requested.

**EMPLOYEE**                             **COMPANY REPRESENTATIVE**

By:_____            By: Jason Rue, HR Manager

    DeShay Ford                              *Jason Rue*

Date:_____             Date: 12/2/2019

Institute For Applied Behavioral Analysis    5777 W. Century Blvd. Los Angeles, CA 90045
Telephone (310)649-0499

22

SPECIAL CLAIMS OFFICE
PO BOX 419076
RANCHO CORDOVA CA  95741-9076



**EDD** Employment
Development
Department
State of California

Mail Date: **12/05/2019**
SSN: **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**
Claimant Phone #: **(805) 827-9987**

EDD TELEPHONE NUMBERS:
English        1-800-300-5616
Spanish        1-800-326-8937
Cantonese      1-800-547-3506
Mandarin       1-866-303-0706
Vietnamese     1-800-547-2058
TTY (non-voice) 1-800-815-9387
website:       **www.edd.ca.gov**

DESHAY D FORD
1409 HALESIA LN
OXNARD CA  93030-6085

## NOTICE OF UNEMPLOYMENT INSURANCE CLAIM FILED

You filed a claim for Unemployment Insurance (UI) benefits effective **12/01/2019**. When you filed your claim you stated:

1. Your last employer was:  **GARY LAVIGNA PSYCH CORP**
   **5777 W CENTURY BLVD STE 675**
   **LOS ANGELES, CA  90045-5632**

2. The last day you worked for that employer was **12/01/2019**.

3. The reason you are no longer working for the above employer is:
   **FIRED OFTER DISABILITY**

4. You are not receiving a pension or other income that may be deductible from your UI benefits.

5. You are able and available to accept full-time work.

6. You have the legal right to work in the United States.

Please review the above information carefully. No action is required by you if the information is correct. The EDD considers this information correct unless you report other information within 10 (ten) days from the mailing date of this notice. Any response after 10 days may result in delay of benefits. To report other information, you may call the EDD or mail your response to the EDD address above. Remember to include your name and Social Security number in all correspondence with the EDD.

Although federal and state laws prohibit the revealing of information about your employment and your UI claim to your spouse, relatives, friends, non-interested parties, and private interest groups, federal legislation requires that such information be made available to state and federal welfare, medical assistance, CalFresh (formerly food stamps), housing, and child support enforcement agencies. Confidentiality is the responsibility of agencies using the information.

You have the option of cancelling a regular California UI claim (refer to your Notice of Unemployment Award for the cancellation requirements). If you do decide you want to cancel your claim, **do not certify for benefits** because once you are paid benefits, the law does not allow you to cancel your claim.

Benefit payments are issued to the EDD Debit Card℠. You should refer to your Guide to Benefits and Employment Services handbook for information about the EDD Debit Card℠. If you were previously issued a card and need a replacement, you must contact Bank of America EDD Debit Card Customer Service toll-free at 1-866-692-9374.

DE 1101CLMT Rev. 6 (3-13)                                                                                    CU



Anton Diffenderfer, Esq.
**THE ANTON LAW GROUP, P.C.**
2140 Eastman Avenue Suite 111
Ventura, California 93003
Tel: (714) 543-0056
Fax: (714) 446-9977

Attorneys for Applicant
**Deshay Ford**

### STATE OF CALIFORNIA

### WORKERS' COMPENSATION APPEALS BOARD

Deshay Ford,

                    Applicant,

vs.

Institute For Applied Behavior Analysis;
and DOES 1-10,

                    Defendants.

**WCAB Case No.: ADJ11994903**

**APPLICATION FOR DISCRIMINATION BENEFITS PURSUANT TO LABOR CODE SECTION 132(a)**

Applicant Deshay Ford (hereinafter "Applicant") applies for benefits and penalties pursuant to LABOR CODE Section 132(a) and alleges:

1.     Institute For Applied Behavior Analysis (hereinafter "Employer") is now, and at all times set forth herein was, an entity of unknown type, and is subject to the jurisdiction of the Workers' Compensation Appeals Board with respect to all matters herein alleged.

2.     The true names and capacities, whether individual, corporate, associate or otherwise, of DOES 1 through 10 are unknown to Applicant who will amend his application to state their true names and capacities when the same has been ascertained.

3.     Applicant is informed and believes and thereon alleges that at all times herein mentioned, defendants were the agents and employees of each other.

4.     On or about 09/26/2018, while engaged in the performance of his job duties, Applicant sustained serious and disabling injuries to his legs. Applicant went to Kaiser Permanente Urgent Care where Applicant received treatment and was given work restrictions.

The Anton Law Group, P.C.
Attorneys at Law

-1-

PETITION FOR BENEFITS PURSUANT TO LABOR CODE SECTION 132(a)

5.      However, on or around the next day, September 27, 2018, Applicant reported his injuries to his employer, who referred Applicant to the company doctor at U.S. Healthworks Medical Group, where Applicant received treatment and was given work restrictions.

6.      On or around, November 1, 2019 Applicant was ready, willing, and able to work full duty work with no restrictions.  Applicant presented his doctor's restrictions to his employer, who refused to accommodate the doctor-advised restrictions.

7.      On or about December 2, 2019, Employer terminated Applicant.

8.      Applicant is informed and believes and thereon alleges that the true reason Employer terminated Applicant is because of his work-related injuries.

**WHEREFORE, Applicant prays:**

a.      That Defendants be found in violation of Labor Code Section 132(a);

b.      For additional benefits pursuant to Labor Code Section 132(a) of an increase of one-half in compensation otherwise recoverable;

c.      For reimbursement of lost wages and work benefits incurred according to proof at trial;

d.      For reimbursement of medical expenses incurred according to proof at trial;

e.      Costs and expenses of suit; and

f.      For such other and further relief as the Workers' Compensation Appeals Board deems proper in the interest of justice.

December 4, 2019

Respectfully submitted,
**THE ANTON LAW GROUP, P.C.**

By: _Diffenderfer_

Attorney for Applicant
Deshay Ford





**PETITION FOR BENEFITS PURSUANT TO LABOR CODE SECTION 132(a)**



OFFICE OF APPEALS
1901 N. Rice Ave., Ste 300
OXNARD CA 93030-7910

*APPENDIXES D*

DESHAY D FORD
Claimant-Appellant

*Evidence E*

GARY LAVIGNA PSYCH CORP
c/o WEBSTER KAPLAN SPRUNGER LLP
Account No: 297-0216
Employer

*1 B*

*EXHIBIT 4*

Case No. **6481723**

Issue(s): 1030/32, 1256

Date Appeal Filed: 01/22/2020

EDD: 0400   BYB: 12/01/2019

Date and Place of Hearing(s):
(1) 02/20/2020  OXNARD

Parties Appearing:
Claimant, Employer

# DECISION

The decision in the above-captioned case appears on the following page(s).

The decision is final unless appealed within 30 calendar days from the date of mailing show below. See the attached "Notice to Parties" for further information on how to file an appeal you are entitled to benefits and have a question regarding the payment of benefits, call ED at 1-800-300-5616.

Keith Schulner, Administrative Law Jud

**FILE COPY**

Date Mailed:   FEB 2

15

19    15

23

(master)

Case No:   6481723
CLT/PET:   Deshay D Ford
Parties Appearing:   Claimant, Employer
Parties Appearing by Written Statement:   None

Oxnard Office of Appeals
ALJ: Keith Schulner

Exhibit T, 4

REV    ~~Evidence~~

## ISSUE STATEMENT

The claimant appealed from a determination disqualifying the claimant for unemployment benefits under Unemployment Insurance Code section 1256 beginning December 1, 2019. A ruling held the employer's reserve account was not subject to charges. The relevant issue in this case is whether the claimant was discharged for misconduct connected with the most recent work.

## FINDINGS OF FACT

The claimant was most recently employed as a community support companion by the employer with a pay rate at or about $14.13 per hour. The claimant worked for the employer approximately six years ending on or about December 2, 2019.

The final incident contributing to the claimant being discharged occurred when the employer accused the claimant of squirting and threatening to squirt a client with water, which is against the rules. The claimant did not squirt or threaten to squirt a patient with water.

## REASONS FOR DECISION

Testimony given at the hearing under oath and subject to cross-examination is generally entitled to greater weight than hearsay statements, whether or not such statements are signed under penalty of perjury. (Precedent Decisions P-B-218, P-B-293 and P-B-378.)

The Statement of Facts above reflects that the testimony in this case by the claimant given under oath and subject to cross examination regarding squirting a patient with water or threatening to squirt a patient has been found to be true over any conflicting statements not subject to cross examination.

An individual is disqualified for benefits if he or she has been discharged for misconduct connected with his or her most recent work. (Unemployment Insurance Code, section 1256.)

(16)

(19)

6481723-200221                                2

The employer's reserve account may be relieved of benefit charges if the claimant was discharged for misconduct. (Unemployment Insurance Code, sections 1030 and 1032.)

"Misconduct connected with the work" is a substantial breach by the claimant of an important duty or obligation owed the employer, willful or wanton in character and tending to injure the employer. (Precedent Decision P-B-3, citing *Maywood Glass Co. v. Stewart* (1959) 170 Cal.App.2d 719.)

The employer has the burden of proving misconduct. (*Prescod v. California Unemployment Insurance Appeals Board* (1976) 57 Cal.App.3d 29.)

In deciding the claimant was not disqualified for unemployment benefits, no opinion as to whether the employer was justified in discharging the claimant is made. Conduct that warrants discharge does not constitute misconduct under section 1256 unless it evinces culpability or bad faith. (Amador v. California Unemployment Insurance Appeals Board (1984) 35 Cal.3rd 671, 680 fn 4.) The conduct may be harmful to the employer's interests and justify the employee's discharge, but a claimant's actions require a disqualification from unemployment insurance benefits only if they are willful, wanton or equally culpable. (Ibid.)

In the instant case, considering it was not proven that the claimant committed the alleged acts for which he was accused, the employer did not meet the burden of proving that the claimant was discharged for misconduct connected with the work that was a substantial breach by the claimant of an important duty or obligation owed the employer, willful or wanton in character and tending to injure the employer. Thus, the claimant is qualified for benefits under section 1256 and the employer's reserve account is not relieved of benefit charges under sections 1030 and 1032.

DECISION

The department determination and ruling are reversed. The claimant is qualified for benefits under code section 1256 as the claimant was not discharged for misconduct connected with the claimant's most recent work. Benefits are payable provided the claimant is otherwise eligible. The employer's reserve account is subject to benefit charges under sections 1030 and 1032.

OX: KS 1/2





Eyhis.t, 51



# Stipulation for Arbitration
## Arbitrator Identified - Standard Procedures

**Completion of this section is <u>required for all consumer or employment claims</u>.**

## CONSUMER AND EMPLOYMENT ARBITRATION
**Please indicate if this is a CONSUMER ARBITRATION. For purposes of this designation, and whether this case will be administered in California or elsewhere, JAMS is guided by *California Rules of Court Ethics Standards for Neutral Arbitrators, Standard 2(d) and (e)*, as defined below, and the JAMS Consumer and Employment Minimum Standards of Procedural Fairness:**

☒ **<u>YES</u>**, this **is** a CONSUMER ARBITRATION.

☐ **<u>NO</u>**, this **is not** a CONSUMER ARBITRATION.

"Consumer arbitration" means an arbitration conducted under a pre-dispute arbitration provision contained in a contract that meets the criteria listed in paragraphs (1) through (3) below. "Consumer arbitration" excludes arbitration proceedings conducted under or arising out of public or private sector labor-relations laws, regulations, charter provisions, ordinances, statutes, or agreements.

1. The contract is with a consumer party, as defined in these standards;
2. The contract was drafted by or on behalf of the non-consumer party; and
3. The consumer party was required to accept the arbitration provision in the contract.

"Consumer party" is a party to an arbitration agreement who, in the context of that arbitration agreement, is any of the following:

1. An individual who seeks or acquires, including by lease, any goods or services primarily for personal, family, or household purposes including, but not limited to, financial services, insurance, and other goods and services as defined in section 1761 of the Civil Code;
2. An individual who is an enrollee, a subscriber, or insured in a health-care service plan within the meaning of section 1345 of the Health and Safety Code or health-care insurance plan within the meaning of section 106 of the Insurance Code;
3. An individual with a medical malpractice claim that is subject to the arbitration agreement; or
4. An employee or an applicant for employment in a dispute arising out of or relating to the employee's employment or the applicant's prospective employment that is subject to the arbitration agreement.

In addition, JAMS is guided by its Consumer Minimum Standards and Employment Minimum Standards when determining whether a matter is a consumer matter.

**If Respondent disagrees with the assertion of Claimant regarding whether this IS or IS NOT a CONSUMER ARBITRATION, Respondent should communicate this objection in writing to the JAMS Case Manager and Claimant within seven (7) calendar days of service of the Demand for Arbitration.**

## EMPLOYMENT MATTERS
**If this is an EMPLOYMENT matter, Claimant must complete the following information:**

Private arbitration companies are required to collect and publish certain information at least quarterly, and make it available to the public in a computer-searchable format. In employment cases, this includes the amount of the employee's annual wage. The employee's name will not appear in the database, but the employer's name will be published. Please check the applicable box below:

☐ Less than $100,000    ☐ $100,000 to $250,000    ☒ More than $250,000    ☐ Decline to State

## WAIVER OF ARBITRATION FEES
**In certain states (e.g. California), the law provides that consumers (as defined above) with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of the arbitration fees.** In those cases, the respondent must pay 100% of the fees. Consumers must submit a declaration under oath stating the consumer's monthly income and the number of persons living in his or her household. Please contact JAMS at 1-800-352-5267 for further information. Note: this requirement is not applicable in all states.

(18)

# Stipulation for Arbitration

**Arbitrator Identified - Standard Procedures**

*(JAMS logo)*

*EXHIBIT, 5,* **24**

---

ARBITRATION MATTER BETWEEN

REFERENCE NUMBER

**CLAIMANT**    Deshay Ford

**RESPONDENT**    Institute for Applied Behavioral Analysis

## STIPULATION FOR ARBITRATION AND SELECTION OF ARBITRATOR

It is stipulated and agreed by the Parties to submit all disputes, claims or controversies to neutral, binding arbitration at JAMS, pursuant to the JAMS Arbitration Administrative Policies and, unless otherwise agreed in writing by the parties, to the applicable JAMS Arbitration Rules and Procedures.

The Parties hereby agree to give up any rights they might possess to have this matter litigated in a court or jury trial.

Parties agree that **Hon. Luis Cardenas** shall serve as Arbitrator in this matter and that no party may have *ex-parte* communications with the Arbitrator. Any necessary communication with the Arbitrator must be initiated through the case manager.

| | | |
|---|---|---|
| **SIGNATURE** *(signature)* | **DATE** | 9.24.21 |
| **NAME (PRINTED)** Benjamin A. Sampson | **FOR** | Claimant |
| **SIGNATURE** *(signature)* | **DATE** | 9/30/21 |
| **NAME (PRINTED)** Michelle Cuenca Terry | **FOR** | |
| **SIGNATURE** | **DATE** | |
| **NAME (PRINTED)** | **FOR** | |
| **SIGNATURE** | **DATE** | |
| **NAME (PRINTED)** | **FOR** | |

*(handwritten: 19)*

---

EXHIBIT 6

Deshay D. Ford
1409 Halesia Lane
Oxnard, CA. 93030
Telephone: 805-816-6321
E-Mail:deshayford45@mail.com

NOTICE TO NOT PARTICIPATE IN A RACIST
ARBITRATION PROCESS  CREATED BY A
WHITE RACIST ATTORNEY MR. BENJAMIN SAMPSON
BY THREATENING, AND HARASSING THE APPLICANT
BY INTENTIONALLY DECEPTION BY DELIBERATE UNTRUTHS
AN UNETHICAL CONDUCT TO SUBJECT A BLACK MAN
TO A PROCESS OF CLEAR DECEPTION AND RACISM.

Re: Deshay Ford vs. Institute for Applied Behavior Analysis, ICW Group
        Reference #1220071129

Superior Court County of Los Angeles          : Case Number:  21STCV11454

The Applicant did not participate in the selection of Judge Luis Cardenas  as an Arbitrator.
Mr. Benjamin Sampson demanded that I accept Judge Cardenas  I requested an African-
American's Arbitrator.  Mr. Sampson did not comply with my request.  Mr. Sampson said that
the case could not be heard until February of 2023.  Mr. Sampson stated that Ms. Terry had broken
her foot. I asked him to get Mr. Kaplan to handle their case. Mr. Sampson stated that Mr. Kaplan
had to have back surgery. We could not schedule the Arbitration until February ,2023.
Mr. Sampson begin to demand that I sign Ms. Terry's documents.  Mr. Sampson would e-mail me with
threats, and harassment demanding that I sign Ms. Terry's documents. I continue to asked Mr. Sampson
about the status of obtaining me an African-American Arbitrator.  Mr. Sampson behavior became
unethical.  Mr. Sampson was aiding and Abetting the Ms. Terry to help her clients avoid
or circumvent the consequences of violation of California Code Section 11760, Fraud for under
reporting my salaries during three years of disabilities payments that I was receiving from the
employer's Insurance Company ( ICW Group). On 12/02/2019  the Applicant's employer terminated
me for filing a Workers' Compensation claim on 9/26/2018. The Applicant's attorney filed
a Motion of discrimination and violation 132 (a), terminating an injury worker for filing
a Workers' Compensation Claim is a misdemeanor under the 132(a).  Mr. Sampson begin
a campaign with Ms. Terry to circumvent the California Penal Codes Sections, 11760, Fraud,
Labor Code Section 132(a), misdemeanor in violation of California Code 31, Aiding and Abetting
knowingly, and intentionally to cover Ms. Terry's client, and ICW Group violations of California
penal Codes.

Mr. Sampson selected Judge Luis Cardenas specifically for the purpose that Judge Cardenas would
assist Ms. Terry and her clients in breaking the California Penal Codes, Sections 132 (a), CA. Code
Section 11760, Fraud.  Mr. Sampson knew that Judge Cardenas would agree to assist them in helping
their clients to avoid the consequences of violations of California's Penal Codes and Sections.
Mr. Sampson knew that he and Ms. Terry would not be able to  get an African-American's
Arbitration to agree to circumvent the California Penal Codes.  Judge Cardenas would

PAGE 1

20

EXHIBIT, 6 #2

cooperate with Mr. Sampson and Ms. Terry's efforts to help their clients to circumvent
California's laws, penal codes, and sections. Mr. Sampson's racism and unethical conduct
has and will deny a black man his Constitutional rights to obtain a fair and impartial trial or
an Arbitrator. Ms. Terry's Clients have engaged in the racism against black and brown people in the
State of California by violating California Insurance Code 11760, Fraud . Ms. Terry's client
and their insurance company has a history of terminating injured workers after they have
filed Workers' Compensation Claims especially  when the injured workers were a person
of color or from a poor black or brown communities.

Mr. Sampson and Ms. Terry were attempting to prevent a thorough investigation of Ms. Terry's
client and their insurance company ICW Group's conduct in handling cases involving injuries
that their  workers have had while working for the Institute of Applied Behavior Analysis and
ICW Group.


THE APPLICANT WILL NOT PARTICIPATE IN A RACIST CAMPAIGN INVOLVING
JUDGE LUIS CARDENAS, BENJAMIN SAMPSON, AND MS. MICHELE TERRY.
I WILL NOT BE PARTICIPATING IN THE RACIST ORAL ARGUMENT ON AUGUST 8,2022,
AT 9:A.M. ( Ku Klux Klan lynching on 8/8/2022 at 9:00A.M.).
THE APPLICANT IS PLEADING WITH THE HONORABLE COURT TO ALLOW THE
APPLICANT TO HAVE A TRIAL BY JURY OR SELECT AN AFRICAN-AMERICAN
ARBITRATOR.
THE APPLICANT RECOMMEND THAT THE LOS ANGELES DISTRICT ATTORNEY FILE
CHARGES AGAINST MS. TERRY'S CLIENTS FOR VIOLATION OF CA. CODE SECTION
11760, FRAUD, LABOR CODE 132 9 (A) MISDEMEANOR VIOLATIONS , AND CA. CODE
31, AIDING AND ABETTING THE CLIENTS IN VIOLATION OF CA. CODES AND SECTIONS,
11760, 132 (A), AND CA. CODE SECTION 31, AIDING AND ABETTING, AND LABOR CODE
3208.3, MENTAL ILL PATIENT CAUSING SEVERE BODILY INJURY TO THE APPLICANT
ON 9/26/2018.

Submitted  _Deshay O. Ford_    Date _7/19/ 2022_

### PROOF OF SERVICE

I Deshay Ford a party to the action within, hereby declare that on July 19,2022, I served
the attached Notice of Declaration of NON-PARTICIPATION IN A RACISM ARBITRATION
PROCESS ON AUGUST 8,2022, AT 9:A.M. WITH JUDGE LUIS A. CARDENAS.

On July 19,2022  Dshay Ford placed the document in the U.S. Postage mail in Oxnard, CA.

To the follwing addresses:
1. Michele C. Terry, Webster Kaplan ,LLP, 16830 Ventura Blvd., #130, Encino, CA. 91436
2. Judge Luis Cardenas, Jam, Local Solutions , Global Reach, 5 Park Plaza, ,#400, Irvine, CA. 92614

3. Mr. Benjamin Sampson, 6100 Center Drive, Suite 1100, Los Angeles, CA. 90045
4. Superior court of California, 111N. Hill Str. Los Angeles, CA. 90045

I declare under penalty of perjury the foregoing to be true and correct.
Executed at Oxnard, CA.  On July 19,2022



Deshay D. Ford

PAGE 3

Exhibit, T,

1  **WEBSTER KAPLAN LLP**
   **ANDREW B. KAPLAN, CSB 57442**
2  **MICHELLE CUENCA TERRY, CSB 228839**
   **16830 Ventura Blvd., Suite 130**
3  **Encino, CA 91436**
   Los Angeles, CA 90067
4  **Telephone:  (310) 282-9494**
   **Facsimile:  (310) 282-9499**
5

6  Attorneys for Defendant
   INSTITUTE FOR APPLIED BEHAVIOR ANALYSIS
7

8

9              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10            **FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

11

12

| | |
|---|---|
| DESHAY FORD, an individual, | CASE NO. 21STCV11454 |
| Plaintiff, | **DECLARATION OF MICHELLE CUENCA TERRY, ESQ. IN SUPPORT OF DEFENDANT'S REQUEST FOR DISMISSAL OF PLAINTIFF'S CASE DUE TO LACK OF PROSECUTION** |
| vs. | |
| INSTITUTE FOR APPLIED BEHAVIOR ANALYSIS, A CALIFORNIA CORPORATION; and DOES 1 through 35; inclusive, | *[Filed Concurrently with Defendant's Request for Dismissal of Plaintiff's Case Due to Lack of Prosecution.]* |
| Defendants. | Date:      January 4, 2022<br>Time:      8:30 a.m.<br>Dept:      39 |
| | Assigned to Hon. Stephen I. Goorvitch<br>Action Filed: 3/24/2021 |

22

23  I, Michelle Cuenca Terry, Esq. declare as follows:

24      1.  I am an attorney duly admitted to practice law in this State and am partner in the law

25  firm of Webster Kaplan, LLP counsel of record for Defendant Institute for Applied Behavior

26  Analysis, Inc.  I have personal knowledge of all of the facts set forth herein, and if called as

27  a witness, under oath, I could and would competently testify thereto.

28
                                          23

                                           1

EXHIBIT, 7

2.    I am submitting this Declaration in support of Defendant's Request For Dismissal of Plaintiff's Case Due to Lack of Prosecution.

3.    On March 24, 2021, Plaintiff filed his Complaint and it was served on Defendant on or about April 12, 2021.

4.    On May 28, 2021, Defendant filed a Motion to Compel Arbitration based on Plaintiff's signed arbitration agreement executed while he was employed with Defendant.

5.    On August 11, 2021, the Court granted Defendant's Motion to Compel Arbitration.

6.    On August 11, 2021, I received an email from Plaintiff's counsel, Benjamin Sampson, Esq., with a proposed a list of arbitrators which included the Hon. Luis Cardenas (ret.). On September 24, 2021, the parties filed a JAMS Stipulation for Arbitration form which identified Judge Cardenas as the parties' mutually selected arbitrator.  Attached hereto are true and correct copies of Plaintiff's counsel's August 11, 2021 email and the parties JAMS Stipulation for Arbitration, respectively as Exhibits A and B.

7.    On December 2, 2021, Hon. Luis Cardenas (ret.) held an arbitration management conference and set the matter for arbitration on November 14 -18 and November 18 to December 2, 2022. I, along with Plaintiff's counsel, attend the conference.

8.    On or about December 10, 2022, our office served Plaintiff with written discovery requests.  From January 2022 through May 2022, Plaintiff's counsel repeatedly requested for additional time to respond to written discovery and delayed Plaintiff's deposition. After multiple failed attempts to meet and confer with Plaintiff's counsel regarding the outstanding written discovery, our office filed a Motion to Compel discovery responses from Plaintiff on June 8, 2022.

9.    On June 13, 2022, I received Plaintiff's counsel's Substitution of Attorney which stated that Plaintiff was representing himself.

///

///

24

2

EXHIBIT, 7, 38

10.    On July 14, 2022, I received notice from JAMS that the arbitrator set a hearing on August 8, 2022 at 9:00 a.m., regarding Defendant's Motion for an Order Compelling Plaintiff to Respond to Discovery.

11.    On or about July 21, 2022, Defendant's counsel, received a document from Plaintiff stating, among other things that "I will not be participating in the racist oral argument on August 8, 2022 at 9:00 a.m. (Ku Klux Klan lynching on 8/8/2022 at (9:00 a.m.)." Attached hereto is a true and correct copy of the document I received, Exhibit C.

12.    On August 8, 2022, Defendant's counsel attended the telephonic conference set by the arbitrator. Plaintiff Deshay Ford failed to attend the August 8th conference.

13.    On August 24, 2022, the arbitrator issued an order which provided that Plaintiff failed to participate at the August 8, 2022 hearing and therefore "if Claimant Deshay Ford does not respond within 30 days of receiving this notice, the respondent may seek dismissal of your claim." Attached hereto is a true and correct copy of the document I received, Exhibit D.

14.    On November 23, 2022, I spoke with Plaintiff on the telephone regarding Plaintiff's Labor Code Section 132a claim pending before the Workers' Compensation Appeals Board in Oxnard, CA.  During our telephone discussion, Plaintiff brought up the arbitration proceeding. Plaintiff asked me to tell the arbitrator to stop emailing him regarding the arbitration.   I told the Plaintiff that Defendant would be filing a Request for Dismissal of the Arbitration Proceedings due to his failure to participate. On the same day, our office filed and served Defendant's a Request for Dismissal of the Arbitration Proceedings with JAMS.

///
///
///
///
///
///

25

3

Exhibit 7, 4h

15.    On November 29, 2022, I received an order from JAMS arbitration granting Defendant's Request for Dismissal of the Arbitration Proceedings due to Plaintiff's failure to participate in the arbitration process.   Attached hereto is a true and correct copy of the document I received, Exhibit E.


I declare under penalty of perjury and the laws of the State of California that the foregoing is true and correct.

Executed on December 30, 2022, at Los Angeles, California.


_____

Michelle Cuenca Terry
Attorney for Defendant Institute For Applied
Behavior Analysis

36

4
DECLARATION OF MICHELLE C. TERRY IN SUPPORT OF DEFENDANT'S REQUEST FOR DISMISSAL OF
PLAINTIFF'S CASE DUE TO LACK OF PROSECUTION

WKS 1002275 / 4484-0539

S#

**PROOF OF SERVICE**
1013a(3) CCP

EXHBIT 1

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 16830 Ventura Blvd., Suite 130, Encino, CA 91436.

On the date below, I served the foregoing document(s), described as **DECLARATION OF MICHELLE C. TERRY IN SUPPORT OF DEFENDANT'S REQUEST FOR DISMISSAL OF PLAINTIFF'S CASE DUE TO LACK OF PROSECUTION** on the interested parties in this action as follows:

**SERVICE LIST**
*IABA adv. Deshay Ford (Claim No. BEAZL100005090577)*
*1220071129*

| | |
|---|---|
| Deshay Ford<br>1409 Halesia Lane<br>Oxnard, CA 93030<br>deshayford45@gmail.com | Plaintiff Deshay Ford, Pro Per |

**(BY E-MAIL OR ELECTRONIC TRANSMISSION)** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent from e-mail address <egonzalez@wksllp.com> to the persons at the e-mail addresses listed in the Service List.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on December 30, 2022, at Palmdale, California.

_____
Erika Gonzalez

27

5

WKS 1002275 / 4484-0539

<< **Previous** Rule     [ **Back** to Title Index ]     **Next** Rule >>     |     🖶 **Printer-friendly** version of this page





# 2022 California Rules of Court

## Standard 5. General duty

An arbitrator must act in a manner that upholds the integrity and fairness of the arbitration process. He or she must maintain impartiality toward all participants in the arbitration at all times.

### Comment to Standard 5

This standard establishes the overarching ethical duty of arbitrators. The remaining standards should be construed as establishing specific requirements that implement this overarching duty in particular situations.

Maintaining impartiality toward all participants during all stages of the arbitration is central to upholding the integrity and fairness of the arbitration. An arbitrator must perform his or her duties impartially, without bias or prejudice, and must not, in performing these duties, by words or conduct manifest partiality, bias, or prejudice, including but not limited to partiality, bias, or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation, socioeconomic status, or the fact that a party might select the arbitrator to serve as an arbitrator in additional cases. After accepting appointment, an arbitrator should avoid entering into any relationship or acquiring any interest that might reasonably create the appearance of partiality, bias, or prejudice. An arbitrator does not become partial, biased, or prejudiced simply by having acquired knowledge of the parties, the issues or arguments, or the applicable law.

[ Back to Top ]

Complainant is an African-American
75 years old male.
Complainant had filed a racism
against the arbitrator
Judge Luis A. Cardenas
On 9/29/2022
Complainant had filed
a complaint with N.S. Attorney (28)
of racial discrimination against
Luis A. Cardenas. Judge Cardenas
could not be fair nor impartial. (22)

FRAUD IN HEALTH SETTLEMENT
AGREEMENT. DEFENDANTS DELIBERATELY
MISREPRESENTED SALARIES OF
THE APPLICANT DESHAYD. FORD.
REQUESTING THAT AGREEMENT BE
DECLARED Void, AS A RESULT
OF FRAUD

**View the 2021 California Code** | View Previous Versions of the California Code

# 2010 California Code
# Insurance Code
# Article 4. Penalties For
# Misrepresentation

APPENDIXES
B

**INSURANCE CODE**
**SECTION 11760-11760.1**

11760.   (a) It is unlawful to make or cause to be made any knowingly
false or fraudulent statement, whether made orally or in writing, of
any fact material to the determination of the premium, rate, or cost
of any policy of workers' compensation insurance, for the purpose of
reducing the premium, rate, or cost of the insurance. Any person
convicted of violating this subdivision shall be punished by
imprisonment in the county jail for one year, or in the state prison
for two, three, or five years, or by a fine not exceeding fifty
thousand dollars ($50,000), or double the value of the fraud,
whichever is greater, or by both imprisonment and fine.

   (b) Any person who violates subdivision (a) and who has a prior
felony conviction of the offense set forth in that subdivision shall
receive a two-year enhancement for each prior conviction in addition
to the sentence provided in subdivision (a). The existence of any
fact that would subject a person to a penalty enhancement shall be
alleged in the information or indictment and either admitted by the
defendant in open court, or found to be true by the jury trying the

29

*Appendix B & C* [handwritten]

*Violation of Ins 11760 Insurance* [handwritten]
*Fraudulent* *Applicant* STATE OF CALIFORNIA
*under reporting* DIVISION OF WORKERS' COMPENSATION
WORKERS' COMPENSATION APPEALS BOARD

PRE-TRIAL CONFERENCE STATEMENT    1/19/2022    CASE NO. ADJ11994903

STIPULATIONS    *Evidence H* [handwritten]

THE FOLLOWING FACTS ARE ADMITTED:    "FRAUD" [handwritten]    *EVIDENCE* [handwritten circled]

1. Deshay Ford _____, BORN 01/14/1948    *I* [circled]

WHILE ☒ EMPLOYED ☐ ALLEGEDLY EMPLOYED

☒ ON 09/26/2018    *In Violation of* [handwritten]

☐ DURING THE PERIOD(S) _____    *Ins Code 11760, Fraud* [handwritten]
_____    *under reporting Applicant's Salaries* [handwritten]

AS A(N) Teacher _____, OCCUPATIONAL GROUP NUMBER 214 *3 yrs 4* [handwritten]

AT Camarillo _____, CALIFORNIA, *Violation of CA. Code 31* [handwritten]

BY INSTITUTE FOR APPLIED BEHAVIOR ANALYSIS

☒ SUSTAINED INJURY ARISING OUT OF AND IN THE COURSE OF EMPLOYMENT TO RIGHT ANKLE *Aiding & Abetting* [handwritten]
_____

☐ CLAIMS TO HAVE SUSTAINED INJURY ARISING OUT OF AND IN THE COURSE OF EMPLOYMENT TO _____
_____

2. AT THE TIME OF INJURY THE EMPLOYER'S WORKERS' COMPENSATION CARRIER WAS

INSURANCE COMPANY OF THE WEST

☐ THE EMPLOYER WAS    ☐ PERMISSIBLY SELF-INSURED    ☐ UNINSURED    ☐ LEGALLY UNINSURED

3. AT THE TIME OF INJURY, THE EMPLOYEE'S EARNINGS WERE $ 836.92 ← PER WEEK, WARRANTING INDEMNITY

RATES OF $ 557.95 FOR TEMPORARY DISABILITY AND $ 290.00 FOR PERMANENT DISABILITY.

4. THE CARRIER/EMPLOYER HAS PAID COMPENSATION AS FOLLOWS:    (TD/PD/VRMA)

| TYPE | WEEKLY RATE | PERIOD | TYPE | WEEKLY RATE | PERIOD |
|------|-------------|--------|------|-------------|--------|
| TDI | 557.95 | 2/28/19 - 3/14/19 | PDA | 290.00 | 3/15/19 - 6/26/19 |
| TDI | 557.95 | 6/21/19 - 11/1/19 | PDA | 290.00 | 12/3/20 - |
| TDI | 557.95 | 2/6/20 - 7/29/20 | | | |
| TDI | 557.95 | 9/11/20 - 12/2/20 | | | |

☐ THE EMPLOYEE HAS BEEN ADEQUATELY COMPENSATED FOR ALL PERIODS OF T/D CLAIMED THROUGH _____

5. THE EMPLOYER HAS FURNISHED ☒ ALL ☐ SOME ☐ NO MEDICAL TREATMENT.

THE PRIMARY TREATING PHYSICIAN IS _____

6. ☒ NO ATTORNEY FEES HAVE BEEN PAID AND NO ATTORNEY FEE ARRANGEMENTS HAVE BEEN MADE.

7. ☐ OTHER STIPULATIONS

*Claimant Refused to sign and Engage in Fraud* [handwritten circled]    *30* [circled]
*PDF 2/7/2022* [handwritten]    *See PDF (5) 2 thru 6* [handwritten]    *32* [circled]
*See PDF 2 pay stubs* [handwritten]

APPLICANT    Steve Rosenfeld    LIEN CLAIMANT/OTHER
                DEFENDANT

APPendixes
D

4/01/2019                                    10

Deshay Ford
1409 Halesia Lane
Oxnard, CA 93030

| Employee | Deshay Ford | Employer: | INSTITUTE FOR APPLIED BEHAVIOR ANALYSIS IN LIEU OF IABA AS INSTITUTE FOR APPLIED |
| --- | --- | --- | --- |
| Address | 1409 Halesia Lane | Date of Injury: | 09/26/2018 |
| City_State_Zip | Oxnard, CA 93030 | Claim Number: | 2018018236 |

NOTICE REGARDING PERMANENT DISABILITY BENEFITS
PAYMENT START

CW Group is handling your workers' compensation claim on behalf of INSTITUTE FOR APPLIED BEHAVIOR ANALYSIS IN LIEU OF IABA AS INSTITUTE FOR APPLIED.  This notice is to advise you of the status of disability benefits for your workers' compensation injury on the date shown above.

Payment is starting for permanent disability and is sent separately for the period starting 03/15/2019 through 04/03/2019. Your weekly compensation rate is $290.00 based on your average weekly earnings of $836.92. Payments will be sent to you every two weeks on Wednesday and will continue for 15 weeks until $4,350.00 has been paid. These payments will be deducted from any award you may receive. The amount of permanent disability to be paid is based upon: an estimate.

Additional information may be found in the publication Workers' Compensation in California: A Guidebook for Injured Workers.  A complete copy of the Guidebook may be obtained on the Division of Workers' Compensation website (see URL below) or by contacting an Information and Assistance (I&A) Officer of the Division of Workers' Compensation. Permanent Disability is discussed in chapter 7 of the Guidebook.

Guidebook for Injured Workers:

http://www.dir.ca.gov/InjuredWorkerGuidebook/InjuredWorkerGuidebook.html

Chapter 7: Permanent Disability:

http://www.dir.ca.gov/InjuredWorkerGuidebook/Chapter7.pdf

*The State of California requires that you be given the following information:*

You have a right to disagree with decisions affecting your claim. If you have any questions about the information provided to you in this notice, please call me, Marcy Almeida at (858) 350-2761. You also have the right to be represented by an attorney of your choice. However, if you are represented by an attorney, you should call your attorney not me, Marcy Almeida.    6    31



Employee Reference Copy

**Wage and Tax Statement** **2018**

OMB No. 1545-0008

Employer use only
Dept. Corp.
ME6 S 348

...MPORT AND SERVICES LLC
...CHTREE STREET NE
...GA 30309

name, address, and ZIP code

...FORD
...SIA LANE
...CA 93030

...D ID number | a Employee's SSA number
23936 | 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
...ther comp. | 2 Federal income tax withheld
9944.60 | 24.14
...wages | 4 Social security tax withheld
10252.14 | 635.63
...s and tips | 6 Medicare tax withheld
10252.14 | 148.66
...tips | 8 Allocated tips

10 Dependent care benefits

...lans | 12a See instructions for box 12
D | 307.54
...CA SDI | 12b
| 12c
| 12d
| 13 Stat emp Ret. plan 3rd party sick pay
X

...r's state ID no. | 16 State wages, tips, etc.
102, 0 | 9944.60
...ax | 18 Local wages, tips, etc.
4.78
...ax | 20 Locality name

GROSS PAY | 10,252.14 | SOCIAL SECURITY TAX WITHHELD BOX 04 OF W-2 | 635.63

FED. INCOME TAX WITHHELD BOX 02 OF W-2 | 24.14 | MEDICARE TAX WITHHELD BOX 06 OF W-2 | 148.66

STATE INCOME TAX BOX 17 OF W-2 | 4.78 | SUI/SDI BOX 14 OF W-2 | 102.52
LOCAL INCOME TAX BOX 19 OF W-2 | 0.00

To change your employee W-4 profile information
file a new W-4 with your payroll department

RACHELE FORD
1409 HALESIA LANE
OXNARD, CA 93030

Social Security Number: 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
Taxable Marital Status: MARRIED
Exemptions/Allowances:
Federal: 0
State: 0
Local: 0

© 2018 ADP, LLC

PAGE 01 OF 01

## 2018 W-2 and EARNINGS SUMMARY

This blue Earnings Summary section is included with your W-2 to help describe portions in more detail.
The reverse side includes general information that you may also find helpful.

1. The following information reflects your final 2018 pay stub plus any adjustments submitted by your employer.

| | | | | |
|---|---|---|---|---|
| Gross Pay | 49021.17 | Social Security Tax Withheld Box 4 of W-2 | 2974.44 | CA. State Income Tax Box 17 of W-2 | 395.25 |
| | | | | SUI/SDI/FLI Box 14 of W-2 | 479.75 |
| Fed. Income Tax Withheld Box 2 of W-2 | 2450.13 | Medicare Tax Withheld Box 6 of W-2 | 695.63 | | |

2. Your Gross Pay was adjusted as follows to produce your W-2 Statement.

| | Wages, Tips, other Compensation Box 1 of W-2 | Social Security Wages Box 3 of W-2 | Medicare Wages Box 5 of W-2 | CA. State Wages, Tips, Etc. Box 16 of W-2 |
|---|---|---|---|---|
| Gross Pay | 49,021.17 | 49,021.17 | 49,021.17 | 49,021.17 |
| Less 401(k) (D-Box 12) | 1,091.48 | N/A | | 1,091.48 |
| Less Other Cafe 125 | 1,046.40 | 1,046.40 | 1,046.40 | 1,046.40 |
| Reported W-2 Wages | 46,883.29 | 47,974.77 | 47,974.77 | 46,883.29 |

Employee Reference Copy

**Wage and Tax Statement** **2018**
OMB No. 1545-0008

Employer use only
.../1N1 370400 Dept. Corp. A 245

name, address, and ZIP code

...TUTE FOR APPLIED
...VIOR
...W CENTURY BLVD
...ANGELES CA 90045

Batch #02129

name, address, and ZIP code

...ORD
...ESIA LANE
...CA 93030

...ED ID number | a Employee's SSA number
893249 | 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
...other comp. | 2 Federal income tax withheld
46883.29 | 2450.13
...ty wages | 4 Social security tax withheld
47974.77 | 2974.44
...ges and tips | 6 Medicare tax withheld
47974.77 | 695.63
...ty tips | 8 Allocated tips

10 Dependent care benefits

...ode
...c774-5260
...plans | 12a See instructions for box 12
D | 1091.48
| 12b
478.75 SDI | 12c
| 12d
| 13 Stat emp Ret. plan 3rd party sick pay
X

...oyer's state ID no. | 16 State wages, tips, etc.
0216 4 | 46883.29
...e tax | 18 Local wages, tips, etc.
395.25
...e tax | 20 Locality name

3. Employee W-4 Profile. To change your Employee W-4 Profile Information, file a new W-4 with your payroll dept.

DESHAY FORD
1409 HALESIA LANE
OXNARD CA 93030

Social Security Number: 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
Taxable Marital Status: MARRIED
Exemptions/Allowances:
FEDERAL: 3
STATE: 3

© 2018 ADP, LLC







CO.  FILE  DEPT.  CLOCK  VCHR. NO.
1NI  007007 370490 100  00005510349

**Earnings Statement**

INSTITUTE FOR APPLIED BEHAVIOR ANALYSIS
5777 W. CENTURY BLVD., STE 675
LOS ANGELES, CA 90045

Period Beginning:  12/01/2018
Period Ending:  12/15/2018
Pay Date:  12/24/2018

DESHAY FORD
1409 HALESIA LANE
OXNARD CA 93030

Taxable Marital Status:  Married
Exemptions/Allowances:
Federal:  3
CA:  3

Social Security Number: XXX-XX-2532

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 11.0000 | 54.67 | 601.37 | 25,463.10 |
| Overtime | 21.1950 | 54.50 | 1,155.13 | 19,321.47 |
| Vacation | 14.1300 | 31.00 | 438.03 | 3,201.24 |
| Communication | | | | 66.00 |
| Holiday | | | | 654.24 |
| Sick Leave | | | | 315.12 |
| **Gross Pay** | | | **$2,194.53** | 49,021.17 |

Your federal taxable wages this period are
$2,150.93

| Other Benefits and Information | this period | total to date |
|---|---|---|
| Total Work Hrs | 109.17 | |
| Pto Balance | | 20.98 |
| Sick Time Bal | | 24.00 |

| Deductions | Statutory | | |
|---|---|---|---|
| | Federal Income Tax | -122.24 | 2,450.13 |
| | Social Security Tax | -133.36 | 2,974.44 |
| | Medicare Tax | -31.18 | 695.63 |
| | CA State Income Tax | -20.18 | 395.35 |
| | CA SUI/SDI Tax | -21.51 | 479.75 |
| | | | |
| | Other | -43.60* | 1,046.40 |
| | Dental Dep Ptx | | -650.93 |
| | Auto Mileage | | 1,091.48 |
| | 401K | | |
| | **Net Pay** | **$1,622.46** | |
| | Checking Acct 1 | -1,599.42 | |
| | Savings Acct 1 | -223.04 | |
| | **Net Check** | **$0.00** | |

\* Excluded from federal taxable wages

VERIFY DOCUMENT AUTHENTICITY - COLORED AREA MUST CHANGE IN TONE GRADUALLY AND EVENLY FROM DARK AT TOP TO LIGHTER AT BOTTOM

THIS IS NOT A CHECK

NON-NEGOTIABLE

INSTITUTE FOR APPLIED BEHAVIOR ANALYSIS
5777 W. CENTURY BLVD., STE 675
LOS ANGELES, CA 90045

Advice number:  00005510349
Pay date:  12/24/2018

Deposited to the account of
DESHAY FORD

| account number | transit ABA | amount |
|---|---|---|
| xxxxx9015 | xxxx xxxx | $1,599.42 |
| xxxxx9000 | xxxx xxxx | $223.04 |



002871
Earnings Statement

INSTITUTE FOR APPLIED BEHAVIOR ANALYSIS
5777 W. CENTURY BLVD., STE 675
LOS ANGELES, CA 90045

| | | |
|---|---|---|
| Period Beginning: | 11/16/2018 |
| Period Ending: | 11/30/2018 |
| Pay Date: | 12/10/2018 |

Taxable Marital Status:  Married
Exemptions/Allowances:
  Federal:    3
  CA:       3

DESHAY FORD
1409 HALESIA LANE
OXNARD CA 93030

Social Security Number: XXX-XX-2532

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 11.0000 | 115.84 | 1,274.24 | 24,861.73 |
| Regular | 14.1300 | .99 | 13.99 | |
| Overtime | 16.5000 | 1.50 | 24.75 | 18,166.34 |
| Overtime | 21.1950 | 63.68 | 1,349.70 | |
| Communication | | | 6.00 | 66.00 |
| Holiday | 14.1300 | 8.00 | 113.04 | 654.24 |
| Sick Leave | | | | 315.12 |
| Vacation | | | | 2,763.21 |
| **Gross Pay** | | | **$2,781.72** | 46,826.64 |

Your federal taxable wages this period are $2,738.12

| Other Benefits and Information | this period | total to date |
|---|---|---|
| Total Work Hrs | 182.01 | |
| Pto Balance | | 47.63 |
| Sick Time Bal | | 24.00 |

| Deductions | Statutory | | |
|---|---|---|---|
| | Federal Income Tax | -192.70 | 2,327.89 |
| | Social Security Tax | -169.77 | 2,841.08 |
| | Medicare Tax | -39.71 | 664.45 |
| | CA State Income Tax | -46.01 | 375.07 |
| | CA SUI/SDI Tax | -27.38 | 458.24 |
| | **Other** | | |
| | Dental Dep Ptx | -43.60* | 1,002.80 |
| | Auto Mileage | | -650.93 |
| | 401K | | 1,091.48 |
| | **Net Pay** | **$2,262.55** | |
| | Checking Acct 1 | -2,039.51 | |
| | Savings Acct 1 | -223.04 | |
| | **Net Check** | **$0.00** | |

* Excluded from federal taxable wages

---

VERIFY DOCUMENT AUTHENTICITY - COLORED AREA MUST CHANGE IN TONE GRADUALLY AND EVENLY FROM DARK AT TOP TO LIGHTER AT BOTTOM

THIS IS NOT A CHECK

NON-NEGOTIABLE

INSTITUTE FOR APPLIED BEHAVIOR ANALYSIS
5777 W. CENTURY BLVD., STE 675
LOS ANGELES, CA 90045

| | |
|---|---|
| Advice number: | 00000490341 |
| Pay date: | 12/10/2018 |

Deposited to the account of
DESHAY FORD

| | account number | transit ABA | amount |
|---|---|---|---|
| | XXXXX9015 | XXXX XXXX | $2,039.51 |
| | XXXXX9000 | XXXX XXXX | $223.04 |

© 2000 ADP, LLC

# Earnings Statement

INSTITUTE FOR APPLIED BEHAVIOR ANALYSIS
5777 W. CENTURY BLVD., STE 675
LOS ANGELES, CA 90045

Period Beginning:     03/01/2017
Period Ending:        03/15/2017
Pay Date:             03/24/2017

00000000188
**DESHAY FORD**
**1409 HALESIA LANE**
**OXNARD CA 93030**

Taxable Marital Status:   Married
Exemptions/Allowances:
  Federal:        3
  CA:             3

Social Security Number:   XXX-XX-2532

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 10.5000 | 47.84 | 502.32 | 6,521.21 |
| Regular | 13.1300 | 48.16 | 632.34 | |
| Overtime | 19.6950 | 4.84 | 95.32 | 2,390.85 |
| Wage Supp | | | 1,800.00 | 1,800.00 |
| Communication | | | | 18.00 |
| Holiday | | | | 210.08 |
| Vacation | | | | 407.03 |
| **Gross Pay** | | | **$3,029.98** | 11,347.17 |

| Deductions | Statutory | | |
|---|---|---|---|
| | Federal Income Tax | -242.76 | 567.42 |
| | Social Security Tax | -185.16 | 687.31 |
| | Medicare Tax | -43.30 | 160.74 |
| | CA State Income Tax | -48.15 | 63.76 |
| | CA SUI/SDI Tax | -26.88 | 99.77 |

| Other | | |
|---|---|---|
| Dental Dep Ptx | -43.60* | 261.60 |
| 401K | -242.40* | 906.33 |
| Auto Mileage | -236.27 | |

| Adjustment | | |
|---|---|---|
| Auto Mileage | +83.99 | |

| **Net Pay** | **$2,281.72** |
|---|---|
| Checking Acct 1 | -2,281.72 |
| Check | $0.00 |

\* Excluded from federal taxable wages

Your federal taxable wages this period are
$2,743.98

**Other Benefits and**
**Information**            this period      total
Pto Balance
Sick Time Hours



VERIFY DOCUMENT AUTHENTICITY - COLORED AREA MUST CHANGE IN TONE GRADUALLY AND EVENLY FROM DARK AT TOP TO LIGHTER

INSTITUTE FOR APPLIED BEHAVIOR ANALYSIS
5777 W. CENTURY BLVD., STE 675
LOS ANGELES, CA 90045

Advice number:        00000020197
Pay date:             03/24/2017

Deposited to the account of
DESHAY FORD

account number     transit ABA
xxxxx9015          xxxx xxxx

THIS IS NOT A CHECK

(35)

**NON-NEGOTIABL**



Evidence, 1



# DESHAY FORD V. INSTITUTE FOR APPLIED BEHAVIOR ANALYSIS

## JAMS REF. NO. 1220071129

TO:       DESHAY FORD, IN PRO PER

          ANDREW KAPLAN, ESQ.

          MICHELLE TERRY, ESQ.

FROM:     LUIS CARDENAS, JUDGE (RET.)

DATE:     AUGUST 24, 2022

Dear Mr. Ford:

Please be advised that Respondent, Institute For Applied Behavior Analysis, has requested the Arbitrator to issue a notice under JAMS Employment Rules for the case to proceed to hearing or dismissal.

**Rule 19. Scheduling and Location of Hearing**

(b) If a Party <u>has failed to participate in the Arbitration process</u>, and the Arbitrator reasonably believes that the Party will not participate in the Hearing, the Arbitrator may set the Hearing without consulting with that Party. The non-participating

36

Evidence 21

Party shall be served with a Notice of Hearing at least thirty (30) calendar days prior to the scheduled date, unless the law of the relevant jurisdiction allows for, or the Parties have agreed to, shorter notice.  (Emphasis by the arbitrator)

On August 8, 2022, Claimant Deshay Ford failed to participate in the conference call set for the parties to discuss scheduling of the hearing.

If Claimant Deshay Ford does not respond within 30 days of receiving this notice, the respondent may seek a dismissal of your claim.

Please contact Bianca Kelly at: 714-939-1300 if you have questions regarding this notice.

Thank you for your cooperation.


Very truly yours,

Luis Cardenas, Judge (Ret.)

Arbitrator

37



## PROOF OF SERVICE BY EMAIL & U.S. MAIL

Re: Ford, Deshay vs. Institute For Applied Behavior Analysis, A California Corporation
Reference No. 1220071129

I, Rebecca Kirkland, not a party to the within action, hereby declare that on  August 24, 2022, I

served the attached MEMO DATED- AUGUST 24, 2022 on the parties in the within action by Email and by

depositing true copies thereof enclosed in sealed envelopes with postage thereon fully prepaid, in the United

States Mail, at Irvine, CALIFORNIA, addressed as follows:

Andrew B. Kaplan Esq.
Michelle Terry Esq.
Webster Kaplan LLP
16830 Ventura Boulevard
Suite 130
Encino, CA  91436
Phone: 310-282-9494
akaplan@wksllp.com
mterry@wksllp.com
   Parties Represented:
   Institute for Applied Behavior Analysis, a C

Mr. Deshay D Ford
1409 Halesia Lane
Oxnard, CA  93030
Phone: 805-816-6321
deshayford45@gmail.com
   Parties Represented:
   Deshay Ford

I declare under penalty of perjury the foregoing to be true and correct. Executed at Irvine,

CALIFORNIA on  August 24, 2022.

*Rebecca Kirkland*

Rebecca Kirkland
RKirkland@jamsadr.com



*Evidence, 1*

# DESHAY FORD V. INSTITUTE FOR APPLIED BEHAVIOR ANALYSIS

## JAMS REF. NO. 1220071129

TO:          DESHAY FORD, IN PRO PER

             ANDREW KAPLAN, ESQ.

             MICHELLE TERRY, ESQ.

FROM:        LUIS CARDENAS, JUDGE (RET.)

DATE:        NOVEMBER 29, 2022


### INTRODUCTION AND SUMMARY OF THE PROCEEDINGS

On or about March 24, 2021, claimant, Deshay Ford, filed a demand for arbitration before JAMS.

On or about December 2, 2021, the initial Management Conference call was held.

On or about July 14, 2022, Bianca Kelly, the assigned case manager at JAMS, served the parties with a notice for a follow up conference call on August 8, 2022, at 9 a.m.

On or about July 21, 2022, claimant contacted Michelle Terry, counsel for respondent, stating, "I will not be participating in the racist oral argument on August 8, 2022, at 9 a.m.…."

34

*Evidence! 2th*

On August 8, 2022, the undersigned conducted a telephonic conference call to schedule and organize the pending arbitration. Ms. Terry participated in the call, Mr. Ford did not.

On August 24, 2022, the arbitrator issued the following order:

*Please be advised that respondent, Institute, has requested the arbitrator issue a notice under JAMS Rules for the case to proceed to hearing or dismissal.*

### Rule 19. Scheduling and Location of Hearing

*(b) If a Party has failed to participate in the Arbitration process, and the Arbitrator reasonably believes that the Party will not participate in the Hearing, the Arbitrator may set the Hearing without consulting with that Party. The non-participating Party shall be served with a Notice of Hearing at least thirty (30) calendar days prior to the scheduled date, unless the law of the relevant jurisdiction allows for, or the Parties have agreed to, shorter notice. (Emphasis by the arbitrator)*

*On August 8, 2022, you failed to participate in the conference call set for the parties to discuss scheduling of the hearing.*

*If you do not respond within 30 days of receiving this notice, the respondent may seek a dismissal of your claim.*

*Please contact Bianca Kelly at: 714-939-1300 if you have questions regarding this notice.*

*Thank you for your cooperation.*

*Very truly yours,*

*Luis Cardenas, Judge (Ret.) Arbitrator*

JAMS served the arbitrator's August 24, 2022, order on claimant and respondent, and instructed respondent's counsel to wait over 30 days to see if Mr. Ford would respond.



*Evidence 7*

On November 23, 2022, Ms. Terry spoke to Mr. Ford who told her to tell the undersigned to "stop emailing" Mr. Ford regarding the arbitration.

He went on to say he was not interested in participating in the arbitration.

Ms. Terry told Mr. Ford she would be requesting a dismissal.

On November 23, 2022, the arbitrator received *Respondent's Request for Dismissal of Claimant's Claim.*

## CONCLUSIONS AND RULING OF THE ARBITRATOR

1) The arbitrator finds under JAMS Arbitration Rule 19(b):

a) Mr. Ford has failed to participate in the arbitration process.

b) The arbitrator reasonably believes Mr. Ford will not participate.

2) Respondent's *Motion to Dismiss the Arbitration Proceedings* is granted.

IT IS SO ORDERED THIS 29TH DAY OF NOVMEMBER 2022.

LUIS CARDENAS, JUDGE (RET.)

ARBITRATOR

3

41

*E vidence, 4, 4*

## PROOF OF SERVICE BY E-Mail

Re: Ford, Deshay vs. Institute For Applied Behavior Analysis, A California Corporation
Reference No. 1220071129

I, Rebecca Kirkland, not a party to the within action, hereby declare that on  November 29, 2022, I

served the attached ORDER FOR DISMISSAL- November 29, 2022 on the parties in the within action by

electronic mail at Irvine, CALIFORNIA, addressed as follows:

Andrew B. Kaplan Esq.
Michelle Terry Esq.
Webster Kaplan LLP
16830 Ventura Boulevard
Suite 130
Encino, CA   91436
Phone: 310-282-9494
akaplan@wksllp.com
mterry@wksllp.com
     Parties Represented:
     Institute for Applied Behavior Analysis, a C

Mr. Deshay D Ford
1409 Halesia Lane
Oxnard, CA   93030
Phone: 805-816-6321
deshayford45@gmail.com
     Parties Represented:
     Deshay Ford

I declare under penalty of perjury the foregoing to be true and correct. Executed at Irvine,

CALIFORNIA on  November 29, 2022.

*Rebecca Kirkland*
Rebecca Kirkland
JAMS
RKirkland@jamsadr.com

42

DESHAY DAVID FORD

1409 HALESIA LANE

OXNARD, CA. 93030

PHONE N0: 805-816-6321

E-mail:deshayford45@gmail.com

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

Deshay David Ford

           Plaintiff          REQUEST TO PROCEED

                                 IN FORMA PAUPERIS WITH

                                 DECLARATION IN SUPPORT

VS.

Gary Lavigna,

Insurance Company of West, Et. Al

The Plaintiff plead with U.S. district Court to Proceed In Forma Pauperis with

Declaration in Support. The Plaintiff is a 75 years old senior living on a small

Social Security and small pension from Los Angeles County.

The Plaintiff has a permanent disability ( see  Dr. Ronald B. Perelman State Qualified

Medical Examiner, 10/22/2020, attached).

The Plaintiff has a limited ability to work.  He is totally dependent on his Social Security,

and small retirement from Los Angeles County.  Please review Dr. Perelman's Medical Evaluation .

Thank you for your consideration.  My Social Security  per month is $840.00 and my

Small pension is 687.00 per month.

Thank you  again

Submitted by Deshay David Ford/2/25/2023



# RONALD B. PERELMAN, M.D.

### Diplomate American Board of Orthopedic Surgeons

NORTHRIDGE • COVINA • EAST LOS ANGELES • GLENDALE • HAWTHORNE
LOS ANGELES • PALMDALE • POMONA • VALENCIA • VENTURA

*CASE HISTORY*
*LAST EVALUATION*
*By STATE CALIFORNIA 'S*
*Qualified medical Examiner*

October 22, 2020



Workers' Compensation Appeals Board
1901 N. Rice Avenue, Suite 200
Oxnard, CA 93030-7912

Anton Law Group                      Greenup, Hartston & Rosenfeld
2140 Eastman Avenue,                 15060 Ventura Boulevard,
Suite 111                            Suite 100
Ventura, CA 93003                    Sherman Oaks, CA 91403

Attn: Anton Diffenderfer, Esq.       Attn: Nicholas Kontogiannis,
                                                               Esq.

                        RE:    FORD, Deshay
                        EMP:   Institute for Applied
                               Behavior Analysis
                        D/I:   September 26, 2018
                        CL#:   2018018236
                        WCAB#: ADJ11994903
                        PANEL#: 7266931
                        ACCT#: 926265
                        D/E:   October 22, 2020

### QUALIFIED MEDICAL RE-EXAMINATION

To Whom It May Concern:

The above-captioned patient, a 72-year-old male, returns to my
Ventura office, located at 1376 Walter Street, Suite 5, on
October 22, 2020, for orthopedic re-examination of his right
ankle and Achilles tendon.

This updated history was obtained by my medical historian, Ms.
Maribel Fildisis. I then reviewed the history in detail with the
patient.

**Medical records were received for review. My synopsis of those**



October 22, 2020                          Page 2
                                          FORD, Deshay

**records is within the "Addendum" at the end of this report. I
spent one hour and 15 minutes reviewing records.**

Mr. Ford started working for Institute for Applied Behavior
Analysis as a Vocational Training Teacher/Community Support
Companion with the mentally ill on March 20, 2014. The patient
was responsible for helping with medication and transporting
patient's to doctors appointments. Physically the patient's job
requires prolonged standing, walking, and lifting up to 45 pounds
occasionally.

According to the patient, on September 26, 2018, during the
course of his employment, he had taken a client to  Port Huneme
beach, and while walking on the sand, the client, described as
violent, hesitated and then started to run. The patient had to
move quickly to get out of the way, twisting the back of his
right foot, when he experienced an extremely painful pop in his
right heel area, associated with swelling.

The patient presented that day September 26, 2018 to Kaiser
Permanente Urgent Care, where he was seen by Dr. Cruz. X-rays
were obtained and he was treated with a walking boot.

The following day, September 27, 2018, he was referred by his
employer to U.S. Healthworks Medical Group, where he was examined
by Walter Dugger, MD. He was diagnosed with a traumatic rupture
of the right Achilles tendon. An MRI of the right Achilles tendon
was ordered and he was treated with hot/cold therapy wraps and
prescribed  Acetaminophen & Nabumetone.  He was considered
capable of working modified duties and must wear the walking
boot.

On October 10, 2018, he presented to Palms Imaging Center and
underwent an **MRI of the Right Heel without Contrast**. This study
showed: 1) Complete rupture of the Achilles tendon with
approximately 2 cm retraction of the proximal tendon.  This is
seen approximately 7-8 cm superior to the insertion site of the
calcaneus.  2) Moderate grade partial tearing of the tibialis
posterior tendon seen adjacent to the medial malleolus.  3) 1.9
cm ganglion cyst noted along the flexor hallucis longus tendon
adjacent to the sustentaculum tall.

Following the MRI, Dr. Dugger recommended orthopedic evaluation







Page 3
October 22, 2020                                    FORD, Deshay

to evaluate the complete rupture of the right Achilles tendon on
the right, confirmed by the MRI. He was continued on medications,
started on physical therapy, and modified work duties of wearing
the walking boot.

On November 8, 2018, he was seen by Maher Khan, M.D., at U.S.
Healthworks Medical Group, for Orthopedic Surgery Evaluation. He
was not considered a surgical candidate. He was treated with a
heel lift/orthotics and additional physical therapy. He was to
continue working modified duties with the boot and limited
stooping, bending, kneeling and squatting.

The patient was subsequently evaluated by Michael Steinbaum, DPM,
for Podiatry consultation, and was diagnosed with an Achilles
tendon rupture. *(I do not have a copy of this report for review.)*
He was placed in a CAM walker boot with surgery repair requested.
He wore the cam boot until February 2019. In March 2019, he
started walking with his regular shoes, but he still noted
weakness and was walking with a limp.

On April 24, 2019, he presented to Kaiser Permanente Occupational
Medicine, where he was evaluated by John Norton, M.D. He
complained of 0-7/10 pain in the right Achilles area, which was
aggravated with prolonged walking. He was diagnosed with a right
Achilles tendon tear. Dr. Norton notes the requested surgery by
Dr. Steinbaum was still pending.  An updated MRI was ordered and
he was advised to continue wearing the CAM walker boot with the
half inch heel lift. He was released to modified duties of seated
work only and to wear the Cam walker boot at all times.

On May 13, 2019, he presented to Grossman Imaging Centers, where
he underwent an **MRI of the Right Ankle without Contrast**. This
study showed:  1) Full thickness full width noninsertional tear
of the Achilles tendon resulting in a 2.8 cm fluid filled gap
between the proximal and distal stumps.  2) Moderate insertional
tendinosis of the posterior tibial tendon without tenosynovitis
or tear. 3) Ganglion cyst associated with the flexor hallucis
longus tendon at the master knot of Henry. 4) Scarred anterior
talofibular and calcaneofibular ligaments compatible with old
sprain. 5) Mild anterior tibiotalar arthrosis with deep chondral
fissuring and minimal subchondral marrow edema of the anterior
tibial plafond centrally.







Page 4
FORD, Deshay

October 22, 2020

Following the MRI, he underwent surgery on June 21, 2019. He was casted until August 21, 2019 and placed in a walking boot. He was using a show for short distance walking, otherwise a boot.

I initially evaluated this patient on September 5, 2019, for Qualified Medical Examination. My diagnosis was 1. RUPTURE RIGHT TENDO ACHILLES SEPTEMBER 26, 2018, STATUS POST DELAYED REPAIR RECONSTRUCTION JUNE 21, 2019. This injury was work-related and accepted. It was difficult to understand why there was an eight month delay in repairing his tendon Achilles rupture. I didn't have the operative report, but he did have active ankle flexion. In any event, he was not permanent and stationary. He needed postoperative physical therapy, which had been denied. I suggested his Primary Treating physician obtain a postoperative MRI to make sure the repair had worked, since I could not feel it through the swelling.

On November 1, 2019, he returned to Dr. Norton, who diagnosed right Achilles tendon tear. The patient was advised to return to work without restrictions.

On November 8, 2019, the patient was considered permanent and stationary by John Carmel Norton, M.D. The final diagnosis was status post right Achilles tendon tear, status post operative repair June 21, 2019. The calculated whole person impairment was 0%. The patient was recommended future medical care in the form of medication as needed for flare-ups, physician visits 2-4 visits per year and physical therapy, acupuncture and chiropractic care. The patient was advised to return to work without restrictions.

He was seen in my office for re-evaluation on February 6, 2020, at which time, I diagnosed him with: RUPTURE RIGHT TENDO ACHILLES SEPTEMBER 26, 2018, STATUS POST DELAYED REPAIR RECONSTRUCTION JUNE 21, 2019. It was noted, although, he had been declared permanent and stationary on November 8, 2019, he certainly was not. Now that his swelling had decreased, I was able to palpate the area and adequately examine him, but I felt the tendo Achilles was not intact.

I had the operative report dated June 21, 2019 available for my review. This report indicated that surgery was performed by Michael Steinbaum, M.D., in the form of right tendo Achilles







Page 5
October 22, 2020                                    FORD, Deshay

repair. The preoperative  and postoperative diagnosis was right Achilles tendon rupture.

He was not permanent and stationary. He remained temporary totally disabled from his pre-injury job. He was asked to return in the future if warranted.


**UPDATED HISTORY:**

He is working part time as a tutor online via zoom, 8 hours a week, at Oxnard Community College.

On April 9, 2020, he returned to Kaiser for follow up evaluation regarding his right Achilles tendon tear s/p operative repair. Authorization was requested for orthopedic foot/ankle operative consultation.

On June 29, 2020, he returned to Kaiser for follow up visit, at which time, he complained of pain in right posterior ankle. Pain is posterior over the Achilles. Also feels that the push off is very weak. He had Achilles repair two years ago and felt that the repair did not work. The patient has pre-existing conditions of high blood pressure and pre-diabetes. He did not want any reconstruction. He was concerned about recovery and period of immobilization. His doctor would contact in the future if he wants to reconsider an operation. He was advised to return as needed. Right AFO brace was fitted and dispensed per order. Work Status: Permanent and stationary as of 11/08/2019: No restrictions.

On August 07, 2020 - Patient Statement: The patient rights to quality medical treatment was violated by Dr. Mather Khan and the employer and their insurance provider, Insurance Company of the West. On 11/08/2019, Dr. Norton stated that the patient was permanent and stationary and that patient could return to work without limitations or restrictions. Patient was called by his employer and asked to come to their office. On 12/02/2019, the employer manager and HR director terminated the patient on 12/02/2019. The patient filed for his unemployment benefits. The EDD denied the patient his benefits. The employer had alleged that the patient had abused their patient. The patient appealed the denial of benefits on 02/21/2020. The patient won his appeal







October 22, 2020

Page 6
FORD, Deshay

and his benefits were granted by the EDD on 02/21/2020.

The patient has a permanent limp and continuing pain when going for long walks, hiking, and walks on the beach. The patient must take medication for the continual pain. The brace provided caused a severe wound on the right leg. The patient saw Dr. Norton and showed the doctor his wound. Dr. Norton provided the patient with a large band-aid to apply to the wound and referred the patient for a new brace with a mold. On 03/24/2019, Dr. Khan made an error in his diagnosis. Dr. Khan was deliberately attempting to mislead and deny the patient's proper medical treatment for his work related injury. The patient, as a result of the murdering of Mr. George Floyd on 05/25/2020, by the racist hating police officers, the white establishment was confronted with the reality that black Americans are denied quality medical services which are provided to white Americans. The patient is afraid of surgery as the result of the first surgery on 06/21/2019 was bad. The patient will be 73 years old and has pre-existing conditions.

Reconstruction surgery is on hold until his high blood pressure and diabetes is under control. Once this is achieved, he is willing to proceed with surgery.


**UPDATED CURRENT COMPLAINTS:**

RIGHT HEEL/ACHILLES TENDON - He does not feel any improvement as he feels surgery was not beneficial.

There is constant pain in the right posterior ankle, over the Achilles. The pain is aggravated by standing and walking. He is no longer wearing a boot. He is walking with a marked limp and he reports swelling in the right foot/ankle. He wears a brace on a daily basis to prevent further ligament stretch and uses a walking stick for long walks.


**PAST MEDICAL/SOCIAL HISTORY:**

The patient denied any history of diabetes mellitus, lung disease, epilepsy, tuberculosis, collagen disease, cancer, or arthritis.







Page 7
FORD, Deshay

October 22, 2020

He denied any other serious illnesses. He **suffers from hypertension and diabetes.**

The patient is currently taking Metformin, Ibuprofen and medication for hypertension, name un-recalled.

**PHYSICAL EXAMINATION:**

The patient is 72 years of age, 5 feet 8 inches tall, 203 pounds and is right hand dominant. Mr. Ford is alert, cooperative and appears to be in **mild** distress.

LUMBOSACRAL SPINE EXAMINATION

**Physical examination of the patient's lumbosacral spine revealed a marked antalgic gait on the right. The patient was unable to walk on heels and toes without difficulty.** The pelvis was level. There was no loss of the normal lumbar lordosis. **The patient was tested without the cane.** There is no midline tenderness.

| RANGE OF MOTION | | PATIENT | NORMAL |
|---|---|---|---|
| Forward Flexion | | fingertip to ankle (60°+) | fingertip to ankle (60°+) |
| Extension | | 25 degrees | 25 degrees |
| Lateral Flexion | (rt) | 25 degrees | 25 degrees |
| | (lt) | 25 degrees | 25 degrees |

| HIPS | RIGHT | LEFT | NORMAL |
|---|---|---|---|
| Flexion | 140 degrees | 140 degrees | 140 degrees |
| Extension | 0 degrees | 0 degrees | 0 degrees |
| Abduction | 45 degrees | 45 degrees | 45 degrees |
| Adduction | 30 degrees | 30 degrees | 30 degrees |
| Internal Rotation | 45 degrees | 45 degrees | 45 degrees |
| External Rotation | 45 degrees | 45 degrees | 45 degrees |

| KNEES | RIGHT | LEFT | NORMAL |
|---|---|---|---|
| Flexion | 140 degrees | 140 degrees | 140 degrees |
| Extension | 0 degrees | 0 degrees | 0 degrees |








Page 8
FORD, Deshay

October 22, 2020

ANKLES                    RIGHT            LEFT

Noted is a 4" posterior ankle scar. I can not feel an intact Achilles tendon, chronic edema, 1+ bilateral pitting edema and positive Thompson test. Bilateral pes planus noted.

There is slight active plantar flexion against resistance. Ankle girth is 9-1/2" on the right and 10" on the left.

| | RIGHT | LEFT |
|---|---|---|
| Dorsiflexion | 30 degrees | 30 degrees |
| Plantar flexion | +10 degrees | 30 degrees |
| Inversion | 10 degrees | 10 degrees |
| Eversion | 10 degrees | 10 degrees |

| MOTOR POWER | RIGHT | LEFT |
|---|---|---|
| Quadriceps | 5 | 5 |
| Hamstrings | 5 | 5 |
| Gastrocsoleus | 1-2/5 | 5 |
| Extensor Hallucis Longus | 5 | 5 |
| Common Toe Extensor | 5 | 5 |
| Ankle Dorsiflexors | 5 | 5 |
| Gastrocnemius | 5 | 5 |
| Peroneal | 5 | 5 |
| Tibialis Anterior | 5 | 5 |
| Tibialis Posterior | 5 | 5 |
| Iliopsoas | 5 | 5 |
| Gluteus Medius | 5 | 5 |

| REFLEXES | RIGHT | LEFT |
|---|---|---|
| Knee | 2+ | 2+ |
| Ankle | 2+ | 2+ |

SENSATION

Sensation is intact to light touch and pinprick in the lower extremities.

| TESTS | RIGHT | LEFT |
|---|---|---|
| Double Thigh Flexion | negative | negative |
| Cram | negative | negative |







Page 9
FORD, Deshay

October 22, 2020

|                         |          | negative | negative |
|-------------------------|----------|----------|----------|
| Fabere                  |          | negative | negative |
| Babinski                |          | negative | negative |
| Straight Leg Raising    |          |          |          |
|                         | Sitting  | 90°      | 90°      |
|                         | Supine   | 90°      | 90°      |
| Trendelenburg Sign      |          | negative | negative |

VASCULAR

Posterior tibial and dorsalis pedis pulses were palpable in both lower extremities. Capillary return is normal in the toes on both sides. There is no edema or varicosities.

MEASUREMENTS

Circumferential measurements of the lower extremities were:

|            | RIGHT   | LEFT    |
|------------|---------|---------|
| Thigh Girth | 19      | 18-1/2  |
| Calf Girth  | 15      | 15      |
| ASIS to MM  | 34-1/2  | 34-1/2  |

The patient is able to perform a sit-up.

**X-RAY AND DIAGNOSTIC STUDIES:**

X-rays were obtained by my x-ray technician, Mr. Jony L. Parker , California License No. RHP 00073962. The films were then read by me.

Three views of the bilateral ankles/feet revealed left heel spur, right and left mild metatarsus adductus.

**DIAGNOSES:**

1. RUPTURE RIGHT TENDO ACHILLES SEPTEMBER 26, 2018, STATUS POST DELAYED REPAIR RECONSTRUCTION JUNE 21, 2019, FAILED MINIMAL RETURN FUNCTION.





220201201FICIWCA75431



October 22, 2020

Page 10
FORD, Deshay

**DISCUSSION/CAUSATION:**

Having had the opportunity to see and examine the patient in my office and reviewing the mechanism of injury, the patient's subjective complaints of pain and my objective findings, as well as having had the opportunity to review the submitted medical records, I have arrived at the above-noted diagnoses.

This injury is work-related and accepted.

When I last saw this patient, I felt repair had failed and he needed a reconstruction/allograph etc. This apparently was never done. The patient states his blood pressure needs to be under better control. I last saw him on 3/6/2020 and this surgery has never been done, therefore, I will declare him permanent and stationary again. His primary treating physician had already done this on 11/8/19. His reconstructive surgery can be done per future medical care.

**DISABILITY STATUS:**

I have explained to Ms. * that I feel she has reached the maximum benefit from the treatment that has been provided to her. For all practical purposes, her condition can be considered as having reached a **Permanent and Stationary** status.

**SUBJECTIVE FACTORS OF DISABILITY:**

I would characterize the patient's subjective complaints of right foot/ankle pain as intermittent moderate.

**OBJECTIVE FACTORS OF DISABILITY:**

Objectively, there are findings in my physical examination, MRI findings ans surgery.

**WORK RESTRICTIONS:**

Based upon the patient's subjective complaints of pain, coupled







Page 11
FORD, Deshay

October 22, 2020

with my objective findings, she has a disability precluding prolonged weight-bearing activities, excessive walking, working on uneven grounds, working at unprotected heights and stair and ladder climbing.


AMA GUIDELINES FIFTH EDITION:

USE TABLE 17-5 - 15% WHOLE PERSON IMPAIRMENT.

PAIN/ADL:

THE PATIENT HAS PAIN INTERFERENCE WITH ACTIVITIES OF DAILY LIVING, THEREFORE, AN ADDITIONAL 3% WHOLE PERSON IMPAIRMENT IS BEING ADDED TO THE PATIENT'S DISABILITY.

ATTACHED FIND A COPY OF THE PAIN/ADL'S QUESTIONNAIRE REFLECTING THE ACTIVITIES OF DAILY LIVING THE PATIENT HAS DIFFICULTY PERFORMING.

TOTAL:   15% WPI FOR TENDON ACHILLES
         3% WPI FOR PAIN/ADL'S

18% WHOLE PERSON IMPAIRMENT TOTAL PER CVC CHART PAGE 604.


VOCATIONAL REHABILITATION:

If Ms. Ford is unable to return to work with the above-mentioned restrictions, she would be eligible for Supplemental Job Displacement Allowance.


APPORTIONMENT:

Per Labor Code 4663/4664, there is no basis for apportionment.


FUTURE MEDICAL CARE:

The patient should have access to future medical care on an industrial basis in the form of orthopedic evaluations and reconstructive surgery.







Page 12

October 22, 2020                    FORD, Deshay

**RETURN APPOINTMENT:**

No further appointments have been scheduled for the patient; however, I would be happy to see and re-examine her in the future should it become necessary.

Should you have any questions concerning this patient or any of the conclusions made in this report, please do not hesitate to contact this office at your convenience.

Thank you for referring this most pleasant woman to my office for orthopedic examination.

*I declare under penalty of perjury that the information contained in this report and its attachments, if any, is true and correct to the best of my knowledge and belief, except as to information that I have indicated I received from others. As to that information, I declare under penalty of perjury that the information accurately describes the information provided to me and, except as noted herein, that I believe it to be true. I further declare under penalty of perjury that I personally performed the evaluation of the patient, and that except as otherwise stated herein, the evaluation was performed and the time spent performing the evaluation was in compliance with the guidelines, if any, established by the Industrial Medical Council or the administrative director pursuant to paragraph (5) of subdivision (j) of Section 139.2 or Section 5307.6 of the California Labor Code. I further declare under penalty of perjury that I have not violated the provisions of California Labor Code Section 139.3 with regard to the evaluation of this patient or the preparation of this report. I further declare under penalty of perjury that the name and qualifications of each person who performed any services in connection with the report, including diagnostic studies, other than clerical preparation, are as follows:*

|  Name  |  Califications  |
| --- | --- |
| Jony L. Parker | Licensed Radiology Technician |



230201201FICTWCA75431



October 22, 2020

Page 13
FORD, Deshay

Sincerely yours,

Ronald Perelman, M.D.

Date: 7/16/20                              County: Los Angeles

RP:gme
Enclosure:  Itemized Bill, Pain/ADL's Forms, RTW Voucher.

cc: See Proof of Service

Please be advised, the fees charged by this office exceed the official medical fee schedule in this matter.

Such fees above the schedule are in accordance with Labor Code §5307.1.

The explanation for the increased fees would be as follows:

1.  GOLDEN STATE SPORTS INJURY AND ORTHOPEDIC MEDICAL ASSOCIATES/RONALD B. PERELMAN, M.D. AND STAFF have been providing Workers' Compensation evaluation and treatment for over two decades and have treated thousands of patients for industrial injuries.

2.  The fees charged do not exceed GSSI&OMA/RBP's usual and customary charges.

3.  The fees are within the range of those charged by orthopaedic surgeons within and around the local community.

4.  The economic aspects of an orthopaedic practice within a Workers' Compensation practice involve overhead expenses which include but are not limited to the need for qualified persons to conduct collections and make appearances before the board.  There is also the overhead involved in the average amount of time between incurring costs and receipt of payment.  The fees must be above the official medical fee schedule in order to maintain the medical practice.





330301301FICIWCA75431



October 22, 2020

Page 14
FORD, Deshay

## "ADDENDUM" – MEDICAL RECORD REVIEW

**01/24/2020** – Kaiser Permanente: Primary Treating Physician's Progress Report (PR-2), John Norton, M.D. DOI: 09/26/2018. Since last visit, patient has been evaluated by QME, in which evaluator has requested repeat MRI and further physical therapy. Patient is unable to stand on toes on right side. Currently, patient reports no pain. <u>Diagnosis</u>: Right Achilles tendon tear. <u>Plan</u>: Request MRI of the right ankle per QME, refer to physical therapy, and alternate ice and heat. No follow-up needed. <u>Work Status</u>: MMI 11/08/2019, with no permanent work restrictions with future medical care.

**04/09/2020** – Kaiser Permanente: Primary Treating Physician's Supplemental Report, John Norton, M.D. DOI: 09/26/2018. Patient returns for follow-up regarding his right Achilles tendon tear s/p operative repair. Since last visit, he has been evaluated by Dr. Kerman, who states in February that the surgery had failed and he recommended a consultation with an orthopedic foot/ankle specialist. Currently, the patient reports no pain. <u>Diagnoses</u>: 1) History of Achilles tendon rupture. 2) Right Achilles tendon tear, subsequent. <u>Plan</u>: Request orthopedic foot/ankle operative consultation.

**04/09/2020** – Kaiser Permanente: Industrial Work Status Report, John Norton, M.D. The patient has permanent restrictions, as designated by the provider listed. Permanent and stationary 11/08/2019: No restrictions.

**06/29/2020** – Kaiser Permanente: Primary Treating Physician's Supplemental Report, Lauren Krieger, M.D. DOI: 09/26/2018. <u>Chief Complaint:</u> Patient has pain in right posterior ankle. Pain is posterior over the Achilles. Also feels that the push off is very weak. He had Achilles repair two years ago and feels that the repair did not work. <u>Diagnosis</u>: Failed Achilles tendon repair. <u>Plan</u>: He does not want any reconstruction. He is concerned about recover and also any period of immobilization. Will try an AFO. Patient will contact in the future if he wants to consider an operation. Return as needed. Right AFO brace fitted and dispensed per order. <u>Work Status</u>: Permanent and stationary 11/08/2019: No restrictions.

**07/29/2020** – Kaiser Permanente: Office Visit/Progress Notes, John







Page 15
October 22, 2020                                    FORD, Deshay


Norton, M.D. Patient has been evaluated by Dr. Kreiger with no operative recommendations. He was given a plastic ankle brace which has caused skin breakdown over the lateral leg. Advised to discontinue with request for custom molder ankle brace. Currently, the patient reports no pain. <u>Diagnosis</u>: History of Achilles tendon rupture. <u>Plan</u>: QME evaluation to be sent to KP for scanning, request for custom ankle support brace to be fabricated in Physical Therapy. <u>Work Status</u>: No data filed for this patient encounter.

08/07/2020 - Patient Statement ?, Dr. Deshay Ford, PhD. This is tagged and in the chart. The patient rights to quality medical treatment was violated by Dr. Mather Khan and the employer and their insurance provider, Insurance Company of the West. On 11/08/2019, Dr. Norton stated that the patient was permanent and stationary and that patient could return to work without limitations or restrictions. Patient was called by his employer and asked to come to their office. On 12/02/2019, the employer manager and HR director terminated the patient on 12/02/2019. The patient filed for his unemployment benefits. The EDD denied the patient his benefits. The employer had alleged that the patient had abused their patient. The patient appealed the denial of benefits on 02/21/2020. The patient won his appeal and his benefits were granted by the EDD on 02/21/2020. On 6/29/2020, the patient saw Dr. Lauren Krieger. The patient had mailed Dr. Perelman's evaluation to Dr. Krieger on or about 06/20/2020. On 06/29/2020, Dr. Krieger examined the patient's right Achilles tendon injury and stated that Dr. Steinbaum's surgery on <u>06/21/2019 had failed</u>. The patient has pre-existing conditions of high blood pressure and pre-diabetes. The patient is afraid to undergo re-surgery in the same area of the failed surgery by Dr. Steinbaum. The patient's wife is also afraid for the patient to undergo surgery. Te patient has a permanent limp and continuing pain when going for long walks, hiking, and walks on the beach. The patient must take medication for the continual pain. The brace provided to the patient on 06/29/2020 caused a severe wound on the patient's right leg. The patient saw Dr. Norton and showed the doctor his wound. Dr. Norton provided the patient with a large bandaids to apply to the wound and referred the patient for a new brace with a mold. On 03/24/2019, Dr. Khan made an error in his diagnosis. Dr. Khan was deliberately attempting to mislead and deny the patient's proper medical treatment for his work related injury. The patient, as a result of the murdering of Mr.








October 22, 2020

Page 16
FORD, Deshay

George Floyd on 05/25/2020, by the racist hating police officers, the white establishment was confronted with the reality that black Americans are denied quality medical services which are provided to white Americans. The patient is afraid surgery as the result of the first failed surgery on 06/21/2019. The patient will be 73 years old and has pre-existing conditions. Dr. Perelman, QME, was the only medical provider that provided the patient, an African-American male, with fair and impartial medical treatment.

The remainder of records consists of appointment notices, miscellaneous handwritten notes, UR decision, and Notice Regarding Benefits Temporary Disability Benefits: Payment Termination.

*End of review.*







United States District Court
Central District of California
Office Clerk
255 East Temple Street, Room 180
Los Angeles, California 90012